IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

GARY MORRISON, individually
and on behalf of all similarly situated insureds,

    Plaintiff,

v.    CIVIL ACTION NO. 3:23-0451

INDIAN HARBOR INSURANCE COMPANY,
NEPTUNE FLOOD INCORPORATED, and
PENINSULA INSURANCE BUREAU, INC.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

    Pending before the Court is Defendants Indian Harbor Insurance Company and Peninsula Insurance Bureau, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 42) and Defendant Neptune Flood Inc.'s Motion to Dismiss. ECF No. 40. Plaintiff Gary Morrison opposes the motions. For the following reasons, the Court **DENIES** both motions.

**I.
FACTUAL AND
PROCEDURAL BACKGROUND**

    Plaintiff owns a house in Huntington, West Virginia, that suffered flood damage on May 6, 2022. At the time of the flood, the house was insured for flood damage by Indian Harbor Insurance Company ("Indian Harbor"). Indian Harbor is a "surplus lines insurer" that offers specialized and high risk property and casualty policies in West Virginia to cover such things as floods. As Indian Harbor is a "nonadmitted insurer,"[1] consumers in West Virginia only may

---

[1] "'Nonadmitted insurer' means an insurer not licensed to do an insurance business in this state." W. Va. Code § 33-12C-3(p).

procure an Indian Harbor policy through a "surplus lines licensee,"[2] which sometimes is referred to as an "excess line broker."[3] In this case, Neptune Flood Inc. ("Neptune"), which is licensed in West Virginia, was the surplus lines licensee/excess line broker for Indian Harbor. Neptune asserts its role was to act as an intermediary between Indian Harbor and Plaintiff "by ensuring [Indian Harbor] met [its] eligibility criteria to write polices in West Virginia . . .; underwriting the policy; collecting premiums on Plaintiff's policy and remitting the payment of the surplus lines premium tax on Plaintiff's policy to the State[.]" *Def. Neptune Flood Inc.'s Mem. of Law in Supp. of its Mot. to Dismiss*, at 3, ECF No. 41.

After the flood, Plaintiff states he notified Defendants of the damage and immediately cleaned and repaired the house to its condition prior to the flood. *Am. Compl.* ¶¶13, 16. Plaintiff asserts Neptune was given notice of the loss and one of its agents and/or employees "made recommendations and/or determinations regarding the coverage available . . . and communicated that information to Defendants Peninsula and/or Indian Harbor." *Id*. ¶14. Plaintiff claims Defendants misrepresented his policy coverage to him and made wrongful adjustments for depreciation based, in part, on Neptune's statements and recommendations. *Id*. ¶50.

---

[2] "The insurance must be procured only through an individual licensed surplus lines licensee." W. Va. Code § 33-12C-4(f).

[3] "'Surplus lines licensee' means an individual licensed under [§ 33-12C-5] to place insurance on properties, risks or exposures located or to be performed in this state with nonadmitted insurers eligible to accept such insurance. Wherever the term 'excess line broker' appears in this chapter, it shall mean surplus lines licensee." W. Va. Code § 33-12C-3(x).

Peninsula Insurance Bureau, Inc. ("Peninsula"), as an administrator and loss adjuster, states that its "role was to handle Plaintiff's claim, including interacting with Plaintiff." *Mem. of Law in Supp. of Indian Harbor Ins. Co. and Peninsula Ins. Bureau, Inc.'s Mot. to Dismiss Pl.'s Am. Compl.*, at 6 (footnote omitted), ECF No. 43. On June 23, 2022, Peninsula emailed Plaintiff a copy of a letter measuring the replacement cost basis of the damages at $37,469.18 and depreciation in the amount of $4,548.12, resulting in an actual cash value of $32,921.06. *Ltr. from Sherri Wynter with Peninsula to Pl.* (June 23, 2022), at 1, ECF 42-2; *Am. Compl.* ¶20. As the policy also contained a $5,000 deductible, the net payout was calculated to be $27,921.06. *Id*. The letter further alerted Plaintiff he was

> entitled to present a claim for the applied depreciation ($4,548.12) following completion of repairs. We request that you submit the invoices, canceled checks, or other evidence of payment to illustrate your actual incurred cost. Based upon the estimated damages your maximum recovery is $37,469.18. However, we require that you document incurred cost of at least $37,469.18 for the described repairs to collect the full amount of depreciation.

*Id*. at 2. Attached to the letter was a "Sworn Statement in Proof of Loss" setting forth the same calculations and providing that Plaintiff had "180 days from the date of Loss" to make a supplemental claim to recover the $4,548.12 depreciation amount. *Sworn Statement in Proof of Loss,* ECF No. 42-2, at 4. The following day, Plaintiff emailed Peninsula back an executed and notarized copy of that document. *Email from Pl. to Sherri Winter* (June 24, 2022), ECF No. 42-3. Indian Harbor states that it "promptly paid Plaintiff $27,921.06." *Mem. of Law in Supp. of Indian Harbor Ins. Co. and Peninsula Ins. Bureau, Inc.'s Mot. to Dismiss Pl.'s Am. Compl.*, at 7 (citations omitted).

In his Amended Complaint, Plaintiff alleges there should not have been a deduction for depreciation because his policy had replacement cost coverage and Indian Harbor was required to pay him the full amount. *Am. Compl.* ¶¶11, 12, 21. Plaintiff asserts that Defendants not only misrepresented his coverage, but they also failed to assist him in completing his claim. *Id.* ¶19. In doing so, Plaintiff alleges a Declaratory Judgment/Breach of Contract claim against Indian Harbor in Count I, a Common Law Bad Faith claim against Indian Harbor in Count III, and an Unfair Trade Practices Act claim against Indian Harbor, Peninsula, and Neptune in Count IV. In Count II, Plaintiff also asserts a putative class action claim against Indian Harbor under Rule 23 of the West Virginia Rules of Civil Procedure. All three Defendants argue the claims against them must be dismissed.

## II.
## STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court held that courts must look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

When evaluating a motion to dismiss, courts generally are limited to the sufficiency of the allegations in the complaint. If "matters outside the pleadings are presented to and not excluded by the court [for a Rule 12(b)(6) motion], the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Additionally, a court cannot convert a motion to dismiss into a motion for summary judgment if "the parties have not had an opportunity to conduct reasonable discovery." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (citations omitted). However, a court reviewing a Rule 12(b)(6) motion "may . . . consider documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic" without converting the motion into one for summary judgment *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citation and internal quotation marks omitted).

Here, Defendants have attached a copy of the flood insurance policy, a copy of the letter from Sherri Wynter with Peninsula to Plaintiff setting forth the depreciation value and calculation of loss, and the Sworn Statement of Proof of Loss, which Plaintiff executed, notarized, and emailed back to Ms. Wynter. Plaintiff has not challenged the authenticity of any of these documents, and they clearly are all integral to his allegations in the Amended Complaint. Therefore, consideration of these documents does not necessitate the Court converting Defendants' motions to ones for summary judgment.

## III.
## DISCUSSION

### A.
### Indian Harbor and Peninsula's
### Motion to Dismiss

In their joint motion, Indian Harbor and Peninsula argue Plaintiff's breach of contract claim fails as a matter of law because the actual cash value payment made to him (minus the deductible) was consistent with the flood insurance policy. Under the policy, "Actual Cash Value" is defined as "the cost to replace an insured item of property at the time of loss, *less the value of its physical depreciation.*" *Flood Ins. Policy*, at 2, ECF No. 42-1, at 17 (italics added). On the other hand, "Replacement Cost" is defined as "the cost to replace damaged property with materials of like kind and quality, *without deduction for depreciation.*" *Id*. at 4, ECF No. 42-1, at 19 (italics added). The policy further specifically provides, in part, that:

> When the full cost of repair or replacement is more than $1,000 or more than 5 percent of the whole amount of insurance that applies to the "Dwelling", [Indian Harbor] will not be liable for any loss under **Conditions, Loss Settlement—Replacement Cost Loss Settlement**, . . . or **Conditions, Loss Settlement—Actual Cash Value Loss Settlement**, . . . unless and until actual repair or replacement is completed. [The insured] may disregard the "Replacement Cost" condition above and make claim under this **Policy** for loss to dwellings on an "Actual Cash Value" basis. [The insured] may then make claim for any additional liability according to **Conditions, Loss Settlement—Replacement Cost Loss Settlement**, . . . provided you notify us of your intent to do so within 180 days after the date of the loss.

*Flood Ins. Policy*, at 23, ECF No. 42-1, at 38 (bold original). The policy also contains a "**REPLACEMENT COST ENDORSEMENT**" providing that in exchange for Plaintiff's premium for replacement cost

> reference to "Actual Cash Value" in the Policy to which this Endorsement applies are deleted and "Replacement Cost" substituted thereof, subject to the following provisions:

**a)** Any settlement shall be based on whichever is the least of the cost of repairing, replacing or reinstating the destroyed or damaged property with material of like kind and quality;

**b)** The repair, replacement or reinstatement (all hereinafter referred to as 'replacement') shall be intended for the same occupancy as the destroyed or damaged property;

**c)** The replacement must be executed with due diligence and dispatch;

**d)** *Until replacement has been effected the amount of liability under this Policy in respect of loss shall be limited to the actual cash value at the time of loss*;

**e)** If replacement with material of like kind and quality is restricted or prohibited by any by-laws, ordinance or law, any increased cost of replacement due thereto shall not be covered by this Endorsement.

*Replacement Cost Endorsement,* ECF No. 42-1, at 46 (italics added). The Endorsement then provides that payment for loss covered by the policy and the Endorsement:

> *shall not exceed the smallest* of the following amounts:
>
> **i.** the amount of the Policy applicable to the destroyed or damaged property, or
>
> **ii.** the replacement cost of the property or any part thereof identical with such property and intended for the same occupancy and use, or
>
> **iii.** the amount actually and necessarily expended in replacing said property or any part thereof[.]

*Id.* (italics added).

Upon review of the above language, the Court finds the policy permits Indian Harbor to pay an insured actual cash value until repairs, replacement, and reinstatements are effected. Additionally, the policy provides that an insured who is paid actual cash value has 180 days after the date of loss to present a claim to recover the depreciated amount. In this case, it is undisputed that Plaintiff was paid actual cash value. Plaintiff executed and notarized a Sworn Statement in Proof of Loss setting forth the depreciable amount and expressly providing that he had 180 days from the date of loss to make a supplemental claim to recover the applicable depreciation. Additionally, Ms. Wynter's letter that was sent to Plaintiff, together with the Sworn Statement in Proof of Loss for Plaintiff to sign, alerted him that he may make a claim for the applied depreciation after he completes repairs. However, despite this opportunity to make a claim, Indian Harbor and Peninsula assert Plaintiff never did so. In fact, they maintain that, after they considered the claim resolved, Plaintiff did not present any questions or make any demands of them for over a year until he filed this lawsuit. Furthermore, Indian Harbor and Peninsula contend that Plaintiff fails to even allege in his Amended Complaint that he ever made a claim to recover depreciation or that his repair costs exceed the amount he received. Therefore, Indian Harbor and Peninsula argue Plaintiff's breach of contract claim must be dismissed for failing to state a claim.

In response, Plaintiff claims his repairs were completed *before* he received Ms. Wynter's letter and the attached Sworn Statement in Proof of Loss calculating the actual cash value. As the repairs already were "effectuated" as described in subsection d of the Replacement Cost Endorsement, Plaintiff insists Indian Harbor was required to pay him Replacement Cost Value from the outset. Plaintiff further claims that Defendants failed to investigate his underlying claim, failed to determine the repairs already were completed, improperly applied depreciation,

and misled him as to the terms of his policy. Thus, Plaintiff argues he has stated a plausible claim of breach of contract.

Upon review, the Court finds that Plaintiff has raised factual issues sufficient to defeat a motion to dismiss. In his Amended Complaint, Plaintiff alleges he "sustained significant damage to his Property, as well as damages for the cost of removing the resulting debris," and he "timely notified Defendants of the damage" and made a claim under his policy. *Am. Compl.* ¶¶9, 13. Plaintiff further asserts that Defendants "failed to assist [him] in completing his claim and failed to offer and pay [him] the full amount of the damages[.]" *Id.* ¶19. Although Indian Harbor and Peninsula correctly point out that Plaintiff has not specifically alleged in his Amended Complaint that he made a claim to recover the applied depreciation or that his repair costs were in excess of what he received, Rule 8 "does not require 'detailed factual allegations[.]'" *Iqbal*, 556 U.S. at 678. Plaintiff only needs to plead enough facts to show a plausible claim for relief. *Id*. Here, the Court finds Plaintiff's pleadings meet this standard. At this point in the proceedings, the Court is unable to determine what Plaintiff told Defendants about his damages, whether he submitted any evidence of the cost of repair, or what misleading information he believes he was given. While Plaintiff's executed and notarized Sworn Statement in Proof may be strong evidence he agreed to accept actual cash value, the Court does not know what transpired before he signed this document. These are all factual issues best reserved for discovery. Therefore, the Court **DENIES** Indian Harbor and Peninsula's Motion to Dismiss Count I for Declaratory Judgment/Breach of Contract.[4]

---

[4]Indian Harbor and Peninsula make a separate argument that the "declaratory judgment" component of Plaintiff's breach of contract claim should be dismissed because no case or controversy exists. As the Court has declined to dismiss the breach of contract claim, the declaratory judgment aspect of Plaintiff's claim also shall remain.

Turning next to Plaintiff's common law bad faith claim in Count III, Indian Harbor and Peninsula argue there can be no bad faith claim without an underlying breach of contract claim and, therefore, Count III must be dismissed. *Mem. of Law in Supp. of Indian Harbor Ins. Co. and Peninsula Ins. Bureau, Inc.'s Mot. to Dismiss Pl.'s Am. Compl.*, at 16 (citing, in part, *Sizemore v. Allstate Vehicle and Prop. Ins. Co.*, No. 2:19-cv-00704, 2020 WL 4805448, *2 (S.D. W. Va. Aug. 18, 2020) (stating a claim for bad faith cannot exist without a breach of contract)). However, as the breach of contract claim was not dismissed, Plaintiff's claim of common law bad faith also survives. Thus, the Court **DENIES** Indian Harbor and Peninsula's Motion to Dismiss Count III.

Lastly, Indian Harbor and Peninsula argue that Plaintiff's Unfair Trade Practices Act (UTPA) claim in Count IV must be dismissed for two reasons. First, they assert the claim must be dismissed because there is no underlying breach of contract. Similar to the common law bad faith claim, the Court finds this ground insufficient.

Second, they maintain Count IV must be dismissed because the Amended Complaint does not allege facts sufficient to support a "general business practice" as required by West Virginia Code § 33-11-4(9).[5] In *Dodrill v. Nationwide Mut. Ins. Co.*, 491 S.E.2d 1 (W. Va. 1996), the West Virginia Supreme Court explained that to establish a "general business practice" in the settlement of a single insurance claim:

> the evidence should establish that the conduct in question constitutes more than a single violation of W. Va. Code § 33–11–4(9), that the violations arise from separate, discrete acts or omissions in the claim settlement, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a

---

[5]The statute sets out fifteen different business practices that constitute an unfair claims settlement practice. W. Va. Code § 33-11-4(9)(a)-(o).

> whole, the finder of fact is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a "general business practice" and can be distinguished by fair minds from an isolated event.

*Dodrill*, 491 S.E.2d at 13. In other words, for a plaintiff to establish a violation of UTPA based on a single claim, it must be shown that the "insurer (1) violated the UTPA in the handling of the claimant's claim and (2) that the insurer committed violations of the UTPA with such frequency as to indicate a general business practice." *Holloman v. Nationwide Mut. Ins. Co.*, 617 S.E.2d 816, 823 (W. Va. 2005) (citation omitted).

In the Amended Complaint, Plaintiff alleges Defendants failed to properly investigate his claim and failed to determine that the repairs already were complete before it applied depreciation and offered him actual cash value. *Am. Compl.* ¶¶51, 52, 53, 57; *see* W. Va. Code § 33-11-4(9)(c) (providing that an insurer must "adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies"); W. Va. Code § 33-11-4(9)(d) (stating an insurer may not "[r]efus[e] to pay claims without conducting a reasonable investigation based upon all available information"). Plaintiff also alleges Defendants improperly refused to pay replacement value, failed to reasonably explain to him why the decision was made to pay actual cash value under the policy, and misrepresented the terms of the policy to him. *Id.* at ¶¶49, 53, 54, 56; *see* W. Va. Code § 33-11-4(9)(a) (providing an insurer may not "[m]isrepresent[] pertinent facts or insurance policy provisions relating to coverages at issue"); W. Va. Code § 33-11-4(9)(f) (stating an insurer must "attempt[] in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"); W. Va. Code § 33-11-4(9)(n) (stating an insurer must "promptly provide a reasonable explanation of the basis in the

-12-

insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement"). Given these allegations, Plaintiff argues he has sufficiently alleged discrete acts or omissions that constitute a general business practice in violation of the UTPA.

Although Indian Harbor and Peninsula insist these allegations relate to an isolated scenario and cannot support a general business practice, the Court agrees with Plaintiff that such a decision is premature. Assuming the truth of the allegations, it is plausible that Defendants committed separate and discrete acts or omissions in violation of West Virginia Code § 33-11-4(9). If so, it likewise is plausible that Plaintiff may be able to show a general business practice. Therefore, the Court **DENIES** Indian Harbor and Peninsula's motion to dismiss Count IV for violating the UTPA.[6]

## B.
## Neptune's Motion to Dismiss

The only count alleged against Neptune in the Amended Complaint is Count IV for violating the UTPA, which Neptune argues must be dismissed for a variety of reasons. In Count IV, Plaintiff states that, "[u]pon information and belief, the Defendants['] misrepresentations of the coverages available under the Policy and the adjustments for depreciation were based, in part, upon the statements and recommendations of an agent and/or employee of Neptune." *Am. Comp.* ¶50. Plaintiff also incorporates by reference his allegations in Count I against Indian Harbor for breach of contract, which include, inter alia:

> 13. Following the flood on or about May 6, 2022, the Plaintiff
> timely notified Defendants of the damage to his property resulting

---

[6]Counsel for Plaintiff submitted an Affidavit under Rule 56(f) of the Federal Rules of Civil Procedure to explain why discovery is needed in this case. Indian Harbor and Peninsula argue the Affidavit is improper. The Court did not consider the Affidavit in making its decision and, therefore, finds it unnecessary to address the issue.

>from the Flood and presented a claim under the Policy, which was identified as Claim No. 953551 and was handled by Defendants Indian Harbor, Neptune and Peninsula.
>
>14. Upon information and belief, after Defendant Neptune received notice of the loss, an agent and/or employee of Defendant Neptune made recommendations and/or determinations regarding the coverage available to Plaintiff as a result of the flood and communicated that information to Defendants Peninsula and/or Indian Harbor.
>
>\*      \*      \*
>
>19. Defendants Indian Harbor, Neptune and Peninsula failed to assist the Plaintiff in completing his claim and failed to offer and pay the Plaintiff the full amount of the damages to Plaintiff's property resulting from the Flood.
>
>20. On June 23, 2022, Defendants Indian Harbor, Neptune and Peninsula, through Sherri Wynter, an employee of Defendant Peninsula, advised the Plaintiff that Defendant Indian Harbor would pay for only a portion of his damages and would be taking a deduction for depreciation in connection with payment for the necessary repair and/or replacement of the Plaintiff's real property, thereby refusing to pay the Plaintiff for the full amount of the damages to his property caused by the Flood.

*Am. Comp.* ¶¶13, 14, 19, 20. Neptune insists that these allegations are insufficient to state a claim against it. Specifically, it argues that, as a surplus lines licensee/excess line broker, it is subject to different laws and regulations than those governing standard insurance carriers. Neptune asserts West Virginia Code § 33-12C-4(g)(1) protects it from legal actions by providing that a surplus lines "licensee shall be deemed to be in material compliance with the insurance laws of this state, unless the licensee committed a violation of section five of this article that proximately caused loss to the insured[.]" W. Va. § 33-12C-4(g)(1), in part. Section five sets forth the mandatory financial requirements of nonadmitted insurers and the responsibilities of surplus lines licensees to ensure the financial conditions are met. W. Va. § 33-12C-5. As none of the allegations in the Amended Complaint allege that Neptune was not in material compliance with West Virginia Code

§ 33-12C-5, Neptune maintains Plaintiff's claim fails as a matter of law pursuant to West Virginia Code § 33-12C-4(g)(1).

The Court agrees with Neptune that West Virginia Code § 33-12C-4(g)(1) does provide some protection from liability to a surplus lines licensee. However, in this case, Plaintiff has alleged Neptune stepped outside its role as a surplus lines licensee and, essentially, was acting as an adjuster by making "recommendations and/or determinations regarding the coverage available to Plaintiff as a result of the flood." *Am. Compl.* ¶14. Assuming the truth of this allegation, irrespective of whether Neptune was licensed or legally permitted to be act as an adjuster, it cannot get the benefit of protection under subsection (g)(1) if it was acting as another regulated entity in the insurance industry. To hold otherwise would permit surplus lines licensees to escape liability for acts that are completely beyond their statutory authority. Such a result would be nonsensical and erode the purpose of the statute. To get the benefits of (g)(1), a surplus lines licensee must stay in its lane and be acting a surplus lines licensee. Whether Neptune acted in a capacity other than as a surplus lines licensee is a factual issue subject to discovery, not a motion to dismiss.

Similar to the preceding argument, Neptune insists it is not a "person" covered by the UTPA because surplus lines licensees have been carved out as exceptions to the standard laws governing insurance. Neptune argues that because the allegations above exceeded it codified duties of ensuring the eligibility of a surplus lines insurer, underwriting policies, collecting premiums, and remitting taxes, it could not legally do the things Plaintiff has alleged it has done. The Court agrees that Plaintiff's allegations involve acts and omissions that are not included in the statutorily

prescribed duties of a surplus lines licensee. However, that is Plaintiff's exact point. Plaintiff contends Neptune abandoned the limits of its statutory duties and was acting in a capacity that violated the UTPA. At this point, the scope of Neptune's acts and omissions is an open question not amenable to dismissal.

In this same vein, Neptune argues that, if one of its employees acted outside his or her statutory authority, the employee was a "rogue" employee, and it cannot be held responsible for the employee's actions. Moreover, Neptune argues there can be no liability because Plaintiff has not alleged any claim of respondeat superior or vicarious liability. However, whether or not one of Neptune's employees was "rogue" or acting under Neptune's policies and/or direction is a matter left to be seen. Therefore, the Court rejects Neptune's argument the claim should be dismissed on this basis.

Neptune further contends that it cannot be held liable under the UTPA because, "absent a contractual obligation to pay a claim, no bad faith cause of action exists, either at common law or by statute." *Hawkins v. Ford Motor Co.*, 566 S.E.2d 624, 629 (W. Va. 2002). As it has no contractual obligation to pay, Neptune states the UTPA does not apply to it. However, Neptune's argument ignores the sentence that immediate precedes this quote and that was adopted in Syllabus Point 2 of *Hawkins*, providing the UPTA applies "to those persons or entities and their agents who are engaged in the business of insurance." Syl. Pt. 2, *Hawkins*. As Neptune in engaged in the business of insurance, *Hawkins* does not exclude it from liability.

As with Indian Harbor and Peninsula, Neptune also argues that Plaintiff has failed to allege a general business practice. For the same reasons explained above, the Court denies this argument as premature.

Alternatively, Neptune argues the Amended Complaint sounds in fraud and fails to meet the heightened pleading standard under Rule 9 of the Federal Rules of Civil Procedure. In relevant part, Rule 9(b) provides that, "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b), in part. In *Gue v. Nationwide Insurance Company of America*, No. 3:21-0123, 2021 WL 3576697 (S.D. W. Va. Aug. 12, 2021), this Court addressed the necessity of pleading some claims with particularity under the UTPA. Specifically, the Court recognized that, when a UTPA claim sounds in fraud, it "has applied the Rule 9(b) standard, rather than the standard under Rule 8, in ruling on a motion to dismiss[.]" 2021 WL 3576697, at *4 (citing *Beattie v. Skyline Corp.*, 906 F. Supp.2d 528, 537 (S.D. W. Va. 2012)). Although acknowledging "there are circumstances when it is appropriate to relax this heightened pleading standard because 'the evidence of fraud is within a defendant's exclusive possession,'" [the Court] recognized that a plaintiff ordinarily cannot plead fraud in a vague manner." *Id.* (quoting *Beattie*, 906 F. Supp.2d at 537; other citation and some internal quotation marks omitted). Employing this construct, the Court found in *Gue* the plaintiffs' conclusory allegations that the insurer had made misrepresentations in "shoppers guides, marketing materials, and advertising" sounded in fraud, but the allegations lacked sufficient detail to satisfy Rule 9(b)'s particularity requirement. *Id.* Instead of dismissing the claim, however, the Court found the better approach was to allow the Plaintiff to amend the Complaint to conform with the pleading standard. *Id.*

In this case, Plaintiff alleges within his UTPA claim that "the adjustments for depreciation were based, in part, upon the statements and recommendations of an agent and/or employee of Neptune." *Am. Comp.* ¶50. What fraudulent statements and recommendations, if any, were made to Indian Harbor and Peninsula, however, are very likely within the exclusive possession of Defendants. Thus, the Court finds this allegation sufficient under a more relaxed pleading standard to survive a motion to dismiss.[7]

On the other hand, Plaintiff's general allegations that "Defendants" misrepresented his policy and the availability of insurance to him also sound in fraud, but the facts needed to support these allegations are not within the exclusive control of Defendants. Instead, to the extent misrepresentations were made to Plaintiff, he should be able to, "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Wilson v. Kellogg, Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999); internal quotation marks omitted)). Additionally, when "several defendants are party to the fraud claims, the plaintiff 'usually may not group all wrongdoers together in a single set of allegations. Rather, the claimant is required to make specific and separate allegations against each defendant.'" *Beattie v. Skyline Corp.*, 906 F. Supp.2d 528, 537 (S.D. W. Va. 2012) (quoting *Moore's Federal Practice and Procedure* § 9.11(1)(b)(i) (2012)). Here, Plaintiff makes a number of allegations in relation to his UTPA claim by simply alleging

---

[7]In his Response, Plaintiff states that, in *Moore v. Indian Harbor Ins. Co.*, 3:22-cv-0385 (S.D. W. Va. 2022), there was evidence produced that Neptune provided Indian Harbor information used to make coverage decisions, and Plaintiff suspects the same will be discovered in this case. Neptune maintains it is its "Policy Checklist" that it is required to keep by statute. As this evidence is outside the pleadings, the Court does not consider it for purposes of this motion.

"Defendants" misrepresented facts, coverage, and the terms of the policy, but he does not identify specific and separate allegations against each Defendant. As Plaintiff's assertion he was misled sounds in fraud, he must allege more. As in *Gue* and in the interests of justice, the Court finds it is best accomplished through permitting Plaintiff to amend his pleadings to meet the pleading standard.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendants Indian Harbor Insurance Company and Peninsula Insurance Bureau, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 42) and Defendant Neptune Flood Inc.'s Motion to Dismiss. ECF No. 40. If Plaintiff chooses to file a Second Amended Complaint to add more specific allegations to support his UTPA claim, the Court **ORDERS** him to do so **on or before July 15, 2024**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:   July 1, 2024

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE