# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

**GARY MORRISON,**
**Individually and on behalf of all**
**similarly situated insureds,**

        **Plaintiff,**　　　　　　　　　　**Civil Action No. 3:23-cv-00451**
　　　　　　　　　　　　　　　　　　　　**Honorable Robert C. Chambers**

**v.**

**INDIAN HARBOR INSURANCE COMPANY,**
**NEPTUNE FLOOD INCORPORATED,**
**PENINSULA INSURANCE BUREAU, INC., and**
**SHERRI WYNTER.**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

Pending before the Court is "Plaintiffs' Motion to Compel Defendants Indian Harbor Insurance Company and Peninsula Insurance Bureau, Inc. to Designate and Produce Rule 30(b)(6) Witnesses for Depositions." (ECF No. 89). Defendants Indian Harbor Insurance Company ("Defendant Indian Harbor") and Peninsula Insurance Bureau, Inc. ("Defendant Peninsula") have filed their collective response in opposition to the motion (ECF No. 100) and the Plaintiff Gary Morrison ("Plaintiff") has filed a reply (ECF No. 103). Thus, the motion is now ripe for decision.

Having considered the briefing of the parties and their arguments, the court **GRANTS** the motion to compel in part and **DENIES** it in part, as set forth below.

I.     **Relevant Facts**

This matter arises from a flood which occurred on May 6, 2022, and which damaged the Plaintiff's residential property located at 1448 Washington Blvd, Huntington, West Virginia. (ECF No. 89 at 2); *see also* (ECF No. 37). At the time of the flood, Plaintiff's property was insured under a flood insurance policy issued by Defendant Indian Harbor, identified as Policy No. ASR3027275 ("the Policy"), with effective dates of coverage from May 27, 2021 through May 27, 2022. (ECF Nos. 89 at 2, 100 at 2-3). The Policy was a replacement cost policy and provided replacement cost coverage for flood damage to Plaintiff's real property. (ECF Nos. 89 at 2, 100 at 3-4).

Plaintiff asserts that the Policy contains a Replacement Cost Endorsement which deleted each reference to "Actual Cash Value" in the Policy and in addition, the Policy expressly provides, under the Section entitled "Replacement Cost Loss Settlement," that payments would be made "without deduction for depreciation." (ECF No. 89 at 2).

Defendants Indian Harbor and Peninsula assert that under the applicable Policy Conditions, Replacement Cost Loss Settlement, the Policy provided, as follows:

1. We will pay to repair or replace the damaged "Dwelling" after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

    a.    The "Building" limit of liability shown on your "Declarations Page;"
    b.    The "Replacement Cost" of that part of the "Dwelling" damaged, with materials of like kind and quality, and for like use; or
    c. The necessary amount actually spent to repair or replace the damaged part of the "Dwelling" for like use.

2.    If the "Dwelling" is rebuilt at a new location, the cost described above is limited to the cost that would have been incurred if the "Dwelling" had been rebuilt at its former location.

  3. When the full cost of repair or replacement is more than $1,000 or more than 5 percent of the whole amount of insurance that applies to the "Dwelling", we will not be liable for any loss under Conditions, Loss Settlement – Replacement Cost Loss Settlement, 1.a. above or Conditions, Loss Settlement – Actual Cash Value Loss Settlement, 1.a. below unless and until actual repair or replacement is completed. You may disregard the "Replacement Cost" conditions above and make claim under this Policy for loss to dwellings on an "Actual Cash Value" basis. You may then make claim for any additional liability according to Conditions, Loss Settlement – Replacement Cost Loss Settlement, 1.a., b., and c. above, provided you notify us of your intent to do so within 180 days after the date of loss.

  (ECF Nos. 100 at 3, 100-2 at 40).

  Defendants Indian Harbor and Peninsula also cite to language in the Policy which defined "Actual Cash Value" as "the cost to replace an insured item of property at the time of loss, less the value of its physical depreciation." (ECF Nos. 100 at 4, 100-2 at 19). Defendants indicate that "Replacement Cost" was defined as "the cost to replace damaged property with materials of like kind and quality, without deduction for depreciation." (Id. at Pg. 4.)

  Defendants further contend that the applicable Policy provided replacement cost coverage for the Property's contents. (ECF No. 100 at 4) (Listing Coverages & Premiums at the Premises and including Coverage: E. Replacement Costs on Contents with an annual premium of $14.00). The Replacement Cost Endorsement provided that "until replacement has been effected the amount of liability under this Policy in respect of loss shall be limited to the actual cash value at the time of loss ...." (Id., citing ECF No. 100-2 at 48). Defendants assert that the Policy endorsement provided:

  The Underwriters' liability for loss under this Policy, including this Endorsement, shall not exceed the smallest of the following amounts:

   i.  The amount of the Policy applicable to the destroyed or damaged property, or

> ii. the replacement cost of the property or any part thereof identical with such property and intended for the same occupancy and use, or
> iii. the amount actually and necessarily expended in replacing said property or any part thereof ….

(Id.)

Following the flood, Indian Harbor and Peninsula received notification of Plaintiff's loss under the Policy. Plaintiff asserts that he promptly proceeded to clean-up and repair his property to prevent further damage.

The Plaintiff specifically alleged, at Paragraphs 15 and 16 of his Second Amended Complaint:

> 15. After the loss, Plaintiff immediately went to work to prevent further damage to the Property, running a pump for two days to evacuate water from the Property.
> 16. After cleaning up the water, Plaintiff completed repairs to the property sufficient to return it to the condition it was prior to the flood event. These repairs included, but were not limited to, replacing the HVAC system and hot water tank that were damaged by water.

(ECF No. 89 at 2).

Plaintiff contends that Defendants Indian Harbor and Peninsula failed to assist him in completing his claim and failed to offer and pay him the full amount to repair or replace his damaged property. (Id. at 2-3). Instead, Defendants Indian Harbor and Peninsula, through Sherri Wynter, an employee of Defendant Peninsula, advised the Plaintiff that Defendants would pay for only a portion of his damages and would be taking a deduction for depreciation in connection with the payment for the necessary repair and/or replacement of the Plaintiff's real property. (Id.).

Defendants Indian Harbor and Peninsula contend that Defendant Peninsula received notice of the flood damage on or about May 8, 2022. (ECF No. 100 at 5). They

maintain that Peninsula promptly investigated and adjusted Plaintiff's claim. (Id.). They further contend that Defendant Peninsula notified Plaintiff on June 23, 2022 that the damage to his home had been measured on a replacement cost basis in the amount of $37,469.18, on an actual cash value basis in the amount of $32,921.06, and that the claim was subject to an applicable deductible in the amount of $5,000. (Id.). Defendants argue that Defendant Peninsula informed Plaintiff that his maximum recovery would be $37,469.18 (the replacement cost) but that Plaintiff would be required to document incurred costs of at least $37,469.18 to collect that amount. (ECF No. 100 at 5). Peninsula requested that Plaintiff "submit the invoices, canceled checks, or other evidence of payment to illustrate the actual incurred cost" of repairs. *See* (Id.) Plaintiff returned an executed Sworn Statement in Proof of Loss in which he swore to the loss measurement provided by Defendant Peninsula. (ECF No. 100 at 5-6, citing to Sworn Statement in Proof of Loss). Plaintiff made a claim for the Actual Cash Value of his loss in the amount of $32,921.06, less his $5,000 deductible, for a net claim amount of $27,921.06. Indian Harbor paid Plaintiff $27,921.06. *See* (ECF No. 100 at 5-6).

Based upon his contention that the Defendants failed to properly pay his claim pursuant to the applicable Policy terms, Plaintiff filed his Complaint, including a putative class action, on June 23, 2023, naming Indian Harbor and Peninsula as Defendants. (ECF No. 89 at 3); *see also* (ECF No. 1). Plaintiff subsequently amended his Complaint. In his Second Amended Complaint, Plaintiff asserted claims for breach of contract, bad faith and violations of West Virginia's Unfair Trade Practices Act in connection with the Defendants' handling of his claim. (Id.); *see also* (ECF No. 37). In addition, the Plaintiff has asserted claims on behalf of all similarly situated insureds of Indian Harbor whose

claims were improperly subject to deductions for depreciation when they purchased replacement cost coverage. (Id.)

In order to obtain evidence to support his claims, Plaintiff has requested the depositions of the corporate representatives of Indian Harbor and Peninsula regarding various topics, as set forth in Plaintiff's Notice of 30(b)(6) Deposition(s) of the Representative(s) of Indian Harbor Insurance Company (ECF No. 75) and Plaintiff's Notice of 30(b)(6) Deposition(s) of the Representative(s) of Peninsula Insurance Bureau, Inc. (ECF No. 76) which were served on November 22, 2024.

As required under Rule 30(b)(6) of the Federal Rules of Civil Procedure, each Notice identified the topics for which one or more corporate representatives were to be designated to testify. The Notice served upon Defendant Indian Harbor included the following topics:

> 1. The communications by and between Indian Harbor (and its representatives) and the Plaintiff (or his legal representatives) regarding the Plaintiff's insurance policy and/or his claim for damage as a result of a flood which occurred on or about May 6, 2022.
>
> 2. Indian Harbor's investigation and handling of the claim of the Plaintiff, from the time of notification of the claim to the present. (This includes the activities completed on behalf of Indian Harbor by others, including any third-party administrator).
>
> 3. The terms and conditions of the Indian Harbor insurance policy covering the Plaintiff's real property, applicable at the time of the Plaintiff's loss.
>
> 4. Indian Harbor's policies, procedures and guidelines regarding the investigation and handling of claims for damage to real property under policies of insurance issued in the State of West Virginia, applicable during the period from 2012 to the present.
>
> 5. The training by Indian Harbor of its representatives during the period of 2012 to the present with respect to the investigation, handling and settlement of claims for damage to real property under policies issued in the State of West Virginia.

6.      The education and training materials provided by Indian Harbor to its representatives from 2012 to the present related to the investigation, handling and/or settlement of claims for damage to real property under policies issued in the State of West Virginia.

7.      Indian Harbor's answers and responses to the Plaintiff's discovery requests served in connection with the present action.

8.      The contracts and agreements between Indian Harbor and any other Defendant applicable during the period of 2012 to the present, addressing or related to the issuance of insurance policies in West Virginia, the investigation and/or handling of claims arising under policies issued in West Virginia, payment for services related to the investigation and/or handling of claims arising under policies issued in West Virginia, and/or the transaction of business in the State of West Virginia.

9.      Indian Harbor's reported income and net profit/loss for 2022, 2023, and 2024.

10.     The claims for loss or damage to real property in the State of West Virginia, handled, investigated, and/or paid by Indian Harbor from 2012 to the present.

11.     The claims for loss or damage to real property in the State of West Virginia, from 2015 to the present where Indian Harbor paid claims and applied or deducted depreciation from the cost to repair or replace the real property. (This includes all such instances where such a deduction was completed on behalf of Indian Harbor by a third-party administrator or representative).

12.     The amount of depreciation withheld or deducted on claims paid by Indian Harbor or under Indian Harbor policies for repair or replacement damage to real property in West Virginia for the period of 2012 to the present. (This includes all such instances where such a deduction was completed on behalf of Indian Harbor by a third-party administrator or representative).

13.      The ownership interest of Neptune in Indian Harbor Insurance Company at any time from 2012 to the present.

14.     The ownership interest of Indian Harbor Insurance Company in Neptune at any time from 2012 to the present.

15.     The ownership interest of Indian Harbor Insurance Company in Peninsula Insurance Bureau, Inc. at any time from 2012 to the present.

16.     The ownership interest of Peninsula Insurance Bureau, Inc. in Indian Harbor Insurance Company at any time from 2012 to the present.

17.     The companies who are or have been members or which have been included in AXA XL insurance group ("The Companies"), for the period of 2012 to the present.

(ECF No. 89 at 4-5) Similar topics were included in the Notice served upon Peninsula, which included:

1. The statements and interviews obtained by and/or provided to Peninsula or its representatives in connection with the claims of the Plaintiff at issue in the present action.

2. The photographs and videos taken by or on behalf of Peninsula of the Plaintiff's property in connection with his claim for damage to his real property

3. The appraisals, estimates, and other documentation prepared by or on behalf of Peninsula regarding the damage sustained by the Plaintiff in connection with his claim.

4. The communications by and between Peninsula and the Plaintiff or his legal representatives regarding the Plaintiff's claim for damage.

5. Peninsula's investigation and handling of the claim of the Plaintiff, from the time Peninsula received notification of the Plaintiff's claim to the present.

6. The terms and conditions of the insurance policy covering the Plaintiff's real property, applicable at the time of the Plaintiff's loss.

7. Peninsula's policies, procedures and guidelines regarding the handling of claims for damage to real property under policies of insurance issued in the State of West Virginia, applicable during the period from 2012 to the present.

8. The training by Peninsula of its representatives during the period of 2012 to the present with respect to the investigation, handling and settlement of claims for damage to real property under policies issued in the State of West Virginia.

9. The education and training materials provided by Peninsula to its representatives from 2012 to the present related to the investigation, handling and/or settlement of claims for damage to real property under policies issued in the State of West Virginia.

10. Peninsula's answers and responses to the Plaintiff's discovery requests served in connection with the present action.

11. The contracts and agreements between Peninsula and any other Defendant, for the period of 2012 to the present, addressing or related to the issuance of insurance policies, the investigation and/or handling of claims, payments for services related to the investigation and/or handling of claims, and/or the transaction of business in the State of West Virginia.

12. Peninsula's net income or loss for 2022, 2023, and 2024.

13. The guidelines and/or claims manuals under which Peninsula has investigated and/or handled claims in the State of West Virginia from 2012 to the present.

14. The number of claims for loss or damage to real property in the State of West Virginia, handled and/or investigated by Peninsula from 2012 to the present.

15. The number of claims for loss or damage to real property in the State of West Virginia, from 2012 to the present, where Peninsula applied or deducted depreciation from its estimate or appraisal for the cost to repair or replace the real property.

16. The amount of depreciation withheld or deducted by Peninsula from its estimates or appraisals for the cost to repair or replace damage to real property in West Virginia for the period of 2012 to the present.

17. The ownership interest of Neptune in Peninsula Insurance Bureau, Inc. at any time from 2012 to the present.

18. The ownership interest of Indian Harbor Insurance Company in Peninsula Insurance Bureau, Inc. at any time from 2012 to the present.

19. The ownership interest of Peninsula Insurance Bureau, Inc. in Neptune at any time from 2012 to the present.

20. The ownership interest of Peninsula Insurance Bureau, Inc. in Indian Harbor Insurance Company at any time from 2012 to the present.

21. The companies who are or have been members or which have been included in AXA XL insurance group ("The Companies"), for the period of 2012 to the present.

22. Neptune's policies and procedures regarding the maintenance of claim files or records related to claims under Neptune Flood policies issued in West Virginia.

(Id. at 5-6).

Having received no designation of Rule 30(b)(6) representatives, Plaintiff's counsel wrote to the counsel for Defendants Indian Harbor and Peninsula to inquire about the depositions. (ECF No. 89-3) Having still received no response, Plaintiff's counsel wrote again on December 19, 2024. (ECF No. 89-4). On December 27, 2024, more than thirty (30) days after service of Plaintiff's 30(b) Notices, Defendants Indian Harbor and Peninsula served their objections and responses to Plaintiff's Notice of 30(b)(6) depositions. (ECF Nos. 89-5, 89-6).

In its responses and objections, Defendant Indian Harbor refused to designate witnesses for topics 1, 2, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16 and 17 (*See* ECF No. 89-5). Defendant Peninsula indicated that it would produce witnesses for some of the requested topics, but it limited its response for topics 1, 2, 3, 5 and 6 by making a general statement that it would "produce a witness to testify regarding its adjustment of Plaintiff's claim" and limited its response to topic 4, which sought a witness regarding all of Defendant Peninsula's communications with the Plaintiff, by indicating that it would "produce a representative to testify generally regarding communications with Plaintiff in Peninsula's file." *See* (ECF No. 89-6). Defendant Peninsula agree to produce a witness for topic 10. (Id.) Defendant Peninsula further indicated that it would not produce any representative(s) to testify regarding topics 7, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21 and 22. (Id.).

Following Defendants Indian Harbor and Peninsula's responses and objections, the parties' counsel conferred on January 2, 2025. (ECF No. 89 at 7). Defendants' counsel reiterated that no witnesses would be produced for the referenced topics. This was confirmed in a letter dated January 7, 2025. (ECF No. 89-7). Defendants' objections to Plaintiff's requests for deposition witnesses generally fall into two categories, relevance or that the information sought is proprietary or confidential.  (ECF No. 100).  Plaintiff subsequently filed the motion to compel designation of Rule 30(b)(6) witnesses.

II. **Discussion**.

Federal Rule of Civil Procedure 30(b)(6) clearly requires an organization served with a Notice or Subpoena pursuant to that Rule to designate one or more representatives

who consent to testify on its behalf. The organization may also "set out the matters on which each person designated will testify." Fed. R. Civ. P. 30(b)(6).

> Specifically, Rule 30 (b)(6) of the Federal Rules of Civil Procedure provides:
>
> (6) Notice or Subpoena Directed to an Organization. In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination. A subpoena must advise a nonparty organization of its duty to confer with the serving party and to designate each person who will testify. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

*Id.*

This requirement was discussed at length in this Court by United States Magistrate Judge Cheryl Eifert in an Order entered in *Martin v. State Farm Mut. Auto. Ins. Co.*, Case No. 3:10-cv-00144 (S.D.W. Va. Feb. 22, 2010) wherein the Court noted:

> The Court interprets Rule 30(b)(6) to mandate an organization served with a Rule 30(b)(6) Notice of Deposition to designate its representatives promptly upon selecting them and reasonably in advance of their testimony. *See* Vol. 7 Moore's Federal Practice § 30.25[3] (Matthew Bender 3rd Edition 2010) (designation must be made "upon receipt" of the notice of examination). The reasonableness of this interpretation is lent support by Rule 37(a)(3)(B)(11), which recognizes the failure of an organization to make a designation under Rule 30(b)(6) as a separate and individual ground upon which the organization may be compelled to comply with a disclosure or discovery request.[ ] Rule 37(a)(3)(B)(ii) would have no practical purpose if an organization could simply wait until commencement of the depositions before designating its representatives. Moreover, in view of the organization's duty to prepare the representatives, so that they can provide complete knowledgeable and binding answers on behalf of the organization, the identities of the witnesses generally will be known to the organization well in advance of the dates selected for the depositions.

*Martin v. State Farm Mut. Auto. Ins. Co.*, Case No. 3:10-cv-00144 (S.D.W. Va. Feb. 22, 2010).

Here, Plaintiff timely requested to confer regarding scheduling Rule 30(b)(6) depositions, but Defendants Indian Harbor and Peninsula have not provided witnesses for most of the topics sought. (ECF Nos. 89-5, 89-6). Defendant Indian Harbor did agree in its objection and responses to designate a witness for topics 3 and 7. (ECF No. 89-5). Also, Defendant Peninsula agreed to designate witnesses for topics 1, 2, 3, 4, 5, 6, and 10, while reserving the right to assert objections as to attorney-client privilege or work product for those topics. (ECF No. 89-6). Defendants Indian Harbor and Peninsula refused to provide a witness for other topics based primarily on a lack of relevance based upon their interpretation of District Judge Robert C. Chambers' July 1, 2024 Order in this matter. (ECF Nos. 89-5, 89-6); *see also* (ECF No. 48). Defendants further assert that a number of the topics are overbroad in that they seek information regarding claims for damage to real property under policies of insurance and are not limited to flood policies. (ECF Nos. 89-5, 89-6). Despite claiming such information was irrelevant, Defendants Indian Harbor and Peninsula agreed to produce the same documents which were previously produced in *Moore v. Indian Harbor Ins. Co.*, No. 3:22-cv-00385 (S.D.W. Va. Mar. 14, 2023), a case which is cited by Plaintiff in this action in support of his motion to compel. *See* (ECF No. 89).

Defendants Indian Harbor and Peninsula's reliance on the District Court's July 1, 2024 as grounds for limiting the scope of the Plaintiff's claims, thereby rendering discovery as to those matters not relevant, is misguided. The Court's July 1, 2024 Order specifically denied the motions to dismiss which were filed by Defendants Indian Harbor and Peninsula, as well as Defendant Neptune Flood, Inc., and the Court did not dismiss a

single claim. *See* (ECF No. 48). Thus, that Order does not render discovery as to any issue irrelevant or moot. (*See* Id.)

Likewise, the offer by Defendants Indian Harbor and Peninsula to provide the same written discovery responses which were made in the *Moore* case, which involved these same defendants, does not satisfy their requirement to produce Rule 30(b)(6) witnesses in this matter. Furthermore, many of the same objections which the defendants have made as to relevancy were rejected by this Court in *Moore v. Indian Harbor Ins. Co.*, No. 3:22-cv-00385 (S.D.W. Va., Mar. 14, 2023)

As the Court stated in *Moore*, Rule 26(b)(1) of the Federal Rules of Civil Procedure outlines the scope of discovery:

> [U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Becton, Dickinson & Co. v. BioMedomics, Inc.*, No. 5:20-CV-536-FL, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). Yet, even if seeking relevant information, the discovery request must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

A party dissatisfied with a discovery response or lack of response can move for an order compelling disclosure or discovery after conferring or attempting to confer with the party that submitted the response or failed to respond. Fed. R. Civ. P. 37(a). Importantly,

the party resisting discovery, not the party seeking discovery, bears the burden of persuasion. *Tinsley v. OneWest Bank, FSB*, No. 3:13-CV-23241, 2014 WL 7005852, at *2 (S.D.W. Va. Dec. 10, 2014) (citations omitted). As such, conclusory and unsubstantiated allegations are simply insufficient to support discovery objections based on the grounds of annoyance, burdensomeness, oppression, or expense. With those rules in mind, the Court addresses the specific discovery disputes identified in Plaintiff's motion.

Insofar as Defendant Peninsula agreed to produce witnesses for topics 1, 2, 3, 4, 5, 6, and 10 and Defendant Indian Harbor agreed to produce witnesses for topics 3 and 7, there appears to be no dispute as to those topics and the Plaintiff's motion to compel is hereby **GRANTED**. Defendants Indian Harbor and Peninsula are **ORDERED** to designate witnesses as to those topics by **April 7, 2025** and make them available for deposition.

As to topics 2, 4, 5, 6, 8, 10, 11, 12, 13, 14, 15, 16, and 17 which were directed toward Defendant Indian Harbor, the Court finds that Defendant Indian Harbor has not met its burden of establishing that such topics are "overbroad, unduly burdensome or harassing" as asserted. *See* (ECF No. 89-5), nor has it established that such topics are irrelevant, particularly in light of this Court's prior findings in the *Moore* case. *See Moore v. Indian Harbor Ins. Co.*, No. 3:22-cv-00385 (S.D.W. Va., Mar. 14, 2023). Thus, Plaintiff's motion to compel as to those topics is hereby **GRANTED**. Defendant Indian Harbor is **ORDERED** to designate witnesses as to those topics by **April 7, 2025** and make them available for deposition. As to topic 9, which seeks Indian Harbor's "reported income and net profit/loss for 2022, 2023, and 2024," the Court finds that, absent a showing of entitlement to punitive damages by the Plaintiff, the Court **DENIES** Plaintiff's motion to compel at this time.

Insofar as the topics addressed to Defendant Peninsula are concerned, the Court finds that Defendant Peninsula has not met its burden of establishing that topics 7, 8, 9, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, and 22 are "overbroad, unduly burdensome or harassing" as asserted. *See* (ECF No. 89-5), nor has it established that such topics are irrelevant, particularly in light of this Court's prior findings in the *Moore* case. *See Moore v. Indian Harbor Ins. Co.*, No. 3:22-cv-00385 (S.D. W.Va., Mar. 14, 2023). As to topic 12, which seeks Peninsula's "net income or loss for 2022, 2023, and 2024," the Court finds that, absent a showing of entitlement to punitive damages by the Plaintiff, the Court **DENIES** Plaintiff's motion to compel at this time.

The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented parties.

**ENTERED**: March 31, 2025



Joseph K. Reeder
United States Magistrate Judge