IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**GARY MORRISON,**
**Individually and on behalf of all**
**similarly situated insureds,**

       **Plaintiff,**                                     Civil Action No. 3:23-cv-00451

v.

**INDIAN HARBOR INSURANCE COMPANY,**
**and PENINSULA INSURANCE BUREAU, INC.**

       **Defendants.**

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's Motion to Compel Defendants Indian Harbor Insurance Company and Peninsula Insurance Bureau, Inc. to Respond to Plaintiff's Discovery Requests. (ECF No. 115). Defendants filed their collective Response in Opposition on March 14, 2025, to which Plaintiff filed a reply on March 21, 2025. (ECF Nos. 119, 121). Therefore, the motion is ripe for decision. Having considered the parties' arguments and the materials submitted, the court **GRANTS** the motion to compel, in part, and **DENIES** it, in part. Defendants shall provide the supplemental responses compelled by this order on or before **April 14, 2025**.

**I.**    **Relevant Facts**

As stated in the Court's recent Order, this matter arises from a flood event on May 6, 2022, which damaged Plaintiff's residential property. (ECF No. 89 at 2); *see also* (ECF No. 37). At the time of the flood, Plaintiff's property was insured under a flood insurance

policy issued by Neptune Flood Incorporated on behalf of Defendant Indian Harbor, identified as Policy No. ASR3027275 ("the Policy"), with effective dates of coverage from May 27, 2021 through May 27, 2022. (ECF Nos. 89 at 2, 100 at 2-3). Defendant Peninsula Insurance Bureau, Inc., served as a third-party administrator for the purpose of Plaintiff's claim.

The Policy was a replacement cost policy and provided replacement cost coverage for flood damage to Plaintiff's real property. (ECF Nos. 89 at 2, 100 at 3-4). Plaintiff asserts that the Policy contains a Replacement Cost Endorsement which deleted each reference to "Actual Cash Value" in the Policy and in addition, the Policy expressly provides, under the Section entitled "Replacement Cost Loss Settlement," that payments would be made "without deduction for depreciation." (ECF No. 89 at 2).

Defendants Indian Harbor and Peninsula assert that under the applicable Policy Conditions, Replacement Cost Loss Settlement, the Policy provided, as follows:

1. We will pay to repair or replace the damaged "Dwelling" after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:
   a. The "Building" limit of liability shown on your "Declarations Page;"
   b. The "Replacement Cost" of that part of the "Dwelling" damaged, with materials of like kind and quality, and for like use; or
   c. The necessary amount actually spent to repair or replace the damaged part of the "Dwelling" for like use.
   2. If the "Dwelling" is rebuilt at a new location, the cost described above is limited to the cost that would have been incurred if the "Dwelling" had been rebuilt at its former location.
   3. When the full cost of repair or replacement is more than $1,000 or more than 5 percent of the whole amount of insurance that applies to the "Dwelling", we will not be liable for any loss under Conditions, Loss Settlement – Replacement Cost Loss Settlement, 1.a. above or Conditions, Loss Settlement – Actual Cash Value Loss Settlement, 1.a. below unless and until actual repair or replacement is completed. You may disregard the "Replacement Cost" conditions above and make claim under this Policy for loss to dwellings on an "Actual Cash Value" basis. You may then make claim for any additional liability according to

> Conditions, Loss Settlement – Replacement Cost Loss Settlement, 1.a., b., and c. above, provided you notify us of your intent to do so within 180 days after the date of loss.

(ECF Nos. 100 at 3, 100-2 at 40).

Defendants Indian Harbor and Peninsula also cite to language in the Policy which defined "Actual Cash Value" as "the cost to replace an insured item of property at the time of loss, less the value of its physical depreciation." (ECF Nos. 100 at 4, 100-2 at 19). Defendants indicate that "Replacement Cost" was defined as "the cost to replace damaged property with materials of like kind and quality, without deduction for depreciation." (*Id.* at 4.)

Defendants further contend that the applicable Policy provided replacement cost coverage for the Property's contents. (ECF No. 100 at 4) (Listing Coverages & Premiums at the Premises and including Coverage: E. Replacement Costs on Contents with an annual premium of $14.00). The Replacement Cost Endorsement provided that "until replacement has been effected the amount of liability under this Policy in respect of loss shall be limited to the actual cash value at the time of loss …." (*Id.*, citing ECF No. 100-2 at 48). Defendants assert that the Policy endorsement provided:

The Underwriters' liability for loss under this Policy, including this Endorsement, shall not exceed the smallest of the following amounts:

> i. The amount of the Policy applicable to the destroyed or damaged property, or
> ii. the replacement cost of the property or any part thereof identical with such property and intended for the same occupancy and use, or
> iii. the amount actually and necessarily expended in replacing said property or any part thereof ….

(*Id.*)

3

Following the flood, Indian Harbor and Peninsula received notification of Plaintiff's loss under the Policy. Plaintiff asserts that he promptly proceeded to clean-up and repair his property to prevent further damage.

The Plaintiff specifically alleged, at Paragraphs 15 and 16 of his Second Amended Complaint:

> 15. After the loss, Plaintiff immediately went to work to prevent further damage to the Property, running a pump for two days to evacuate water from the Property.
> 16. After cleaning up the water, Plaintiff completed repairs to the property sufficient to return it to the condition it was prior to the flood event. These repairs included, but were not limited to, replacing the HVAC system and hot water tank that were damaged by water.

(ECF No. 89 at 2).

Plaintiff contends that Defendants Indian Harbor and Peninsula failed to assist him in completing his claim and failed to offer and pay him the full amount to repair or replace his damaged property. (*Id*. at 2-3). Instead, Defendants Indian Harbor and Peninsula, through Sherri Wynter, an employee of Defendant Peninsula, advised the Plaintiff that Defendants would pay for only a portion of his damages and would be taking a deduction for depreciation in connection with the payment for the necessary repair and/or replacement of the Plaintiff's real property. (*Id*.).

Defendants Indian Harbor and Peninsula argue that Defendant Peninsula received notice of the flood damage on or about May 8, 2022. (ECF No. 100 at 5). They maintain that Peninsula promptly investigated and adjusted Plaintiff's claim. (*Id*.). They further contend that Defendant Peninsula notified Plaintiff on June 23, 2022 that the damage to his home had been measured on a replacement cost basis in the amount of $37,469.18, on an actual cash value basis in the amount of $32,921.06, and that the claim was subject to an applicable deductible in the amount of $5,000. (*Id*.). Defendants argue that

Defendant Peninsula informed Plaintiff that his maximum recovery would be $37,469.18 (the replacement cost) but that Plaintiff would be required to document incurred costs of at least $37,469.18 to collect that amount. (ECF No. 100 at 5). Peninsula requested that Plaintiff "submit the invoices, canceled checks, or other evidence of payment to illustrate the actual incurred cost" of repairs. *See* (*Id.*) Plaintiff returned an executed Sworn Statement in Proof of Loss in which he swore to the loss measurement provided by Defendant Peninsula. (ECF No. 100 at 5-6, citing to Sworn Statement in Proof of Loss). Plaintiff made a claim for the Actual Cash Value of his loss in the amount of $32,921.06, less his $5,000 deductible, for a net claim amount of $27,921.06. Indian Harbor paid Plaintiff $27,921.06. *See* (ECF No. 100 at 5-6).

Based upon his contention that the Defendants failed to properly pay his claim pursuant to the applicable Policy terms, Plaintiff filed his Complaint, including a putative class action, on June 23, 2023, naming Indian Harbor and Peninsula as Defendants. (ECF No. 89 at 3); *see also* (ECF No. 1). Plaintiff subsequently amended his Complaint. In his Second Amended Complaint, Plaintiff asserted claims for breach of contract, bad faith and violations of West Virginia's Unfair Trade Practices Act in connection with the Defendants' handling of his claim. (*Id.*); *see also* (ECF No. 37). In addition, the Plaintiff has asserted claims on behalf of all similarly situated insureds of Indian Harbor whose claims were improperly subject to deductions for depreciation when they purchased replacement cost coverage. (*Id.*)

## II. <u>Relevant law</u>

Rule 26(b)(1) of the Federal Rules of Civil Procedure outlines the scope of discovery:

> [U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Becton, Dickinson & Co. v. BioMedomics, Inc.*, No. 5:20-CV-536-FL, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). Yet, even if seeking relevant information, the discovery request must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

Although Rule 26(b)(1)'s relevance inquiry does not, itself, pose a high bar, however, its proportionality requirement mandates consideration of multiple factors in determining whether to allow discovery of even relevant information. The factors include: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Ceresini v. Gonzales*, No. 3:21-CV-40, 2022 WL 628520, at *3 (N.D.W. Va. Mar. 3, 2022).

Further, this Court holds that "fishing expeditions" which exceed the boundaries of the complaint and are purely based on unsupported speculation are improper. *Philips N. Am. LLC v. Probo Med. LLC*, No. 2:21-CV-00298, 2022 WL 17793491, at *3 (S.D.W. Va. Dec. 19, 2022) (citing *Cuomo v. Clearing House Assn.*, LLC, 557 U.S. 519, 531 (2009) ("Judges are trusted to prevent 'fishing expeditions or an undirected rummaging through

6

… records for evidence of some unknown wrongdoing.'"))

A party dissatisfied with a discovery response or lack of response can move for an order compelling disclosure or discovery after conferring or attempting to confer with the party that submitted the response or failed to respond. Fed. R. Civ. P. 37(a). Importantly, the party resisting discovery, not the party seeking discovery, bears the burden of persuasion. *Tinsley v. OneWest Bank, FSB*, No. 3:13-CV-23241, 2014 WL 7005852, at *2 (S.D.W. Va. Dec. 10, 2014) (citations omitted). As such, conclusory and unsubstantiated allegations are simply insufficient to support discovery objections based on the grounds of annoyance, burdensomeness, oppression, or expense. *Id.*

### III.  Discussion

Plaintiff seeks to compel Defendants' responses to his first set of interrogatories and requests for production of documents. Defendants object to providing any further information, primarily on the basis that they have produced all relevant discovery, and any further information sought by Plaintiff is irrelevant to the case. The Court agrees with Defendants, in part. However, the Court concludes that most of the discovery requests at issue are patently reasonable and seek relevant discoverable information that is proportionate to the needs of the case.

#### *A. Claims Adjusters and Witnesses*

Interrogatory Nos. 1, 2, 4, and 5 concern people who handled Plaintiff's insurance claim and witnesses who have knowledge regarding the claims and defenses in this action.

> Interrogatory No. 1. State the names, personal and business addresses, and the job titles of each agent, employee and representative of Defendant Peninsula/Indian Harbor who had any role (excluding clerical) in the investigation, handling and/or adjustment of the Plaintiff's claim for damage to his property in connection with the May 6, 2022 loss, from the time Defendant Peninsula/Indian Harbor first received notification of the Plaintiff's claim to the present.

7

> Interrogatory No. 2. For each person identified in your answer to the immediately preceding Interrogatory, state whether he/she was licensed to adjust claims in the State of West Virginia at the time he/she played any role in the investigation, handling and/or adjustment of Plaintiff's claim.
>
> Interrogatory No. 4. Provide the name and address of every witness that Defendant Peninsula/Indian Harbor is aware of who has knowledge regarding the facts and circumstances surrounding the matters addressed by Plaintiff's Second Amended Complaint and/or Defendant Peninsula/Indian Harbor's Answer filed in this action, and indicate the subject matter about which the witness has knowledge.
>
> Interrogatory No. 5. Describe in detail the role of each individual (excluding clerical personnel) involved in the adjustment, investigation or evaluation of the Plaintiff's claim.

(ECF Nos. 115-1 at 2-3, 30-32).

In response to the motion to compel, Defendants argue that they have provided the additional information sought by Plaintiffs. (ECF No. 119 at 12). Plaintiff has not established that any further discovery on these issues is required. Therefore, the motion to compel responses to these discovery requests is **DENIED** as moot.

### B. Privilege

Regarding Interrogatory No. 9 and Request for Production Nos. 1, 7, 10, and 14, Plaintiff claims that he is unable to ascertan what information Defendants are withholding because they did not provide a privilege log. (ECF No. 115 at 8, 11, 13, 14, 15). Plaintiff argues that Defendants made multiple claims of privilege throughout their discovery responses and redacted large portions of documents as privileged, but they failed to provide any privilege log, which forced Plaintiff to file this motion to compel. (*Id.* at 5). Plaintiff cites to a recent case in this Court in which the same Defendants did not provide a privilege log. (*Id.*) (citing *Moore v. Indian Harbor Ins. Co.*, No. 3:22-CV-00385, 2023 WL 2520582, at *12 (S.D.W. Va. Mar. 14, 2023)). According to Plaintiff, the fact that Defendants have again failed to provide a privilege log, knowing that it was improper from

8

the *Moore* case, justifies deeming that Defendants waived their attorney-client privilege and ordering Defendants to produce the unredacted documents. (ECF No. 115 at 5).

In response, Defendants argue that they did not produce a privilege log because they did not withhold any responsive documents. (ECF No. 119 at 12-13). They concede that they redacted portions of the claim notes, but they assert that the redacted entries post-date the filing of this lawsuit and are protected by the work product doctrine and/or attorney-client privilege. (*Id.* at 13). Defendants also supposedly redacted portions of a spreadsheet that related to other policyholders and irrelevant claims. (*Id.*).

After the motion to compel was filed, Defendants provided the following "redaction log" to Plaintiff:

| **Bates label** | **Date** | **Subject Matter/Description** | **Basis** |
|---|---|---|---|
| PIB0000131-136 | Multiple | Peninsula Insurance Bureau's claim file notes. All redacted entries are dated after June 23, 2023 | Attorney-client privilege; work product |
| PIB0000952 | 6/30/22 | Neptune/Indian Harbor bordereau prepared by Peninsula Insurance Bureau | All redacted lines contain confidential, irrelevant information regarding other Neptune/Indian Harbor policyholders |
| PIB0000953 | 5/31/22 | Neptune/Indian Harbor bordereau prepared by Peninsula Insurance Bureau | All redacted lines contain confidential, irrelevant information regarding other |

9

|  |  |  | Neptune/Indian Harbor policyholders |
|---|---|---|---|

(ECF No. 121-2).

Plaintiff asserts that the redaction log is insufficient to establish that the information is privileged because it does not identify any of the individuals involved in the communications, the specific dates that the communications occurred, or the specific reasons why any particular privilege applies. (ECF No. 121 at 11). Therefore, Plaintiff maintains that the Court should find that Defendants waived all such objections. (*Id.*).

The Court **ORDERS** Defendants to produce to the Court for *in camera* review the approximate eight pages of documents at issue in both redacted and unredacted form on or before **April 11, 2025**.

### C. *Defendants' Handling of Other Claims*

As to Interrogatory Nos. 14, 15, and 17 directed to Defendant Peninsula; Interrogatory Nos. 15, 16, and 18 directed to Defendant Indian Harbor; and Request for Production Nos. 2, 4, 6, and 8, Defendants argue that they have provided the same documents that they produced in *Moore v. Indian Harbor Ins. Co.*, No. 3:22-CV-00385, 2023 WL 2520582 (S.D.W. Va. Mar. 14, 2023), which concerned other instances in which Defendants paid a flood insurance claim involving West Virginia real property on an actual cash basis. (ECF No. 119 at 14-15). Defendants contend that the information produced in *Moore* should be sufficient in this case, and it would be oppressive and unduly burdensome to produce additional irrelevant information. (*Id.* at 15). Plaintiff replies that the *Moore* production does not sufficiently discharge Defendants' discovery obligations in this separate civil case. (ECF No. 121 at 13). Also, Plaintiff contends that

information may have changed, new witnesses may exist as a result of new conduct, and new documents may have been generated. (Id.). According to Plaintiff, he might be able to obtain some relevant information from the *Moore* documents; however, if not for further production, Plaintiff will supposedly have no ability to follow up or obtain additional information to support his claims. (*Id.*).

The discovery requests as issue are the following:

Interrogatory No. 14 (Peninsula)/15 (Indian Harbor). Identify the total number of Peninsula/Indian Harbor insureds who suffered a covered cause of loss for damage to real property located in West Virginia from June, 2013 to the present, [who received an estimate and/or offer for the cost of repairing and/or replacing the damage to their real property] which reflected a deduction by Peninsula/Indian Harbor for depreciation in connection with the cost of repairing and/or replacing the real property.

Interrogatory No. 15 (Peninsula)/16 (Indian Harbor). Identify Peninsula's/Indian Harbor's claims manuals, guidelines, training materials, e-mails communications and other directives made available to its claims adjusters handling claims in West Virginia at any time within the past ten (10) years which address depreciation in connection with the cost of repairing and/or replacing damage to real property.

Interrogatory No. 17 (Peninsula)/18 (Indian Harbor). Provide the name, address, phone number, and amount of depreciation withheld from Peninsula/Indian Harbor insureds who suffered a covered cause of loss for damage to real property located in West Virginia from June, 2013 to the present, who received an estimate and/or offer from Peninsula/Indian Harbor for the cost of repairing and/or replacing the damage to their real property which reflected a deduction by Peninsula/Indian Harbor for depreciation in connection with the cost of repairing and/or replacing their real property and whose policy contained Replacement Cost Endorsement PFD008 or a similar endorsement.

Request for Production No. 2. Provide copies of the claims manuals of Defendant Peninsula/Indian Harbor in use from June, 2013 to the present. Defendant Peninsula/Indian Harbor may limit its response to materials used by or available to employees or agents of Defendant Peninsula/Indian Harbor dealing with policies issued in West Virginia and/or claims arising from losses in West Virginia. If Defendant Peninsula/Indian Harbor asserts that the requested materials are proprietary, Plaintiff will enter into a stipulated Protective Order to protect the proprietary nature of said materials.

> Request for Production No. 4. Provide copies of all decisional manuals, directives, procedures, rules, and guidelines relied upon, used, utilized, considered, consulted or referred to by Defendant Peninsula/Indian Harbor and/or its employees in the handling of the claims of Plaintiff. Defendant Peninsula/Indian Harbor may limit its production to such materials dated June, 2013 to the present.
>
> Request for Production No. 6. Provide for inspection and copying the claim files related to those claims and Complaints identified in response to Plaintiff's Interrogatory No. 10 served contemporaneously herewith. Defendant Peninsula/Indian Harbor should withhold any medical records, bills, and information contained within the files.
>
> Request for Production No. 8. Produce copies of all training manuals utilized by Defendant Peninsula/Indian Harbor in the training of its representatives responsible for the handling of West Virginia homeowners claims at any time from June, 2013 to the present.

(ECF No. 115-1 at 11-13, 15-16, 18-19, 40-42, 44, 46-48).

The Court finds that the information sought is relevant to Plaintiff's claims, such as his allegations of unfair trade practices and bad faith, but the requests are overly broad. Although Plaintiff asserts that evidence of different types of claims can be used to support his claims, the Court finds that the scope of the discovery sought is overly broad and unduly burdensome. Considering relevance and proportionality concerns, the Court **GRANTS** the motion to compel responses to these requests as limited to **Defendants' flood insurance policies** within the past **five years**.

### D. *Other Lawsuits and Complaints*

Plaintiff seeks information concerning other lawsuits and complaints lodged against Defendants, as follows:

> Interrogatory No. 10. Identify the lawsuits filed against Defendant Peninsula/Indian Harbor at any time within the last five (5) years in West Virginia, which contain or raise allegations of breach of contract, "bad faith," and/or unfair claims settlement practices in the handling of any claim committed by Defendant Peninsula/Indian Harbor or by any of its agents, servants, employees, in-house adjusters or examiners, or

12

independent adjusters with respect to coverage issues, delays, nonpayment of claims, failure to pay or offer appropriate amounts in settlement, wrongful conduct with respect to settlement negotiations, <u>or other conduct related to the handling of a claim for damage</u>. For each case, provide:
a) the complete style of the lawsuit, if applicable;
b) a detailed description of the subject of the Complaint or claim; and
c) how the claim/Complaint was resolved (if resolved).

Interrogatory No. 14. Identify every written communication primarily expressing a "complaint" against Peninsula/Indian Harbor or its claim representatives, with "complaint" defined by the provisions of W. Va. Code §33-11-4(10) to mean "any written communication primarily expressing a grievance." Defendant Peninsula/Indian Harbor may limit its identification to those written communications dated within the last three (3) years which address or relate to West Virginia claims.

Request for Production No. 5. Produce Peninsula/Indian Harbor's Complaint Register maintained as required by W. Va Code §33-11-4(10). Defendant Peninsula/Indian Harbor may limit its production to those materials dated within the last three (3) years which address or relate to West Virginia claims.

(ECF No. 115-1 at 8, 11, 17, 36-37, 39-40, 46).

Defendants argue that information regarding other lawsuits and complaints is irrelevant because Plaintiff testified that he never made a claim for depreciation or submitted any evidence supporting a claim for repairs in excess of the amount that Indian Harbor paid. (ECF No. 119 at 16). Therefore, according to Defendants, Plaintiff does not have any viable claims, including unfair trade practices claims. (*Id.*).

In reply, Plaintiff asserts that Defendants' attacks on the underlying merits of his claims are misplaced. (ECF No. 121 at 2). Plaintiff notes that the Court denied Defendants' motion to dismiss and has not limited the scope of his claims in any manner. (*Id.* at 3). The Court agrees that the discovery sought is relevant to Plaintiff's bad faith and unfair trade practices claims. Defendants have not met their burden resisting discovery of this information. Nevertheless, considering relevance and proportionality, the requests

should be limited in subject matter. The Court **GRANTS** the motion as limited to disputes concerning **flood insurance policies**.

### E. *Financial Statements*

Plaintiff seeks production of Defendants' financial statements for the past few years, as follows:

> Request for Production No. 3. Provide a copy of the financial statements of Defendant Indian Harbor for fiscal years 2022, 2023, and 2024 (once available).

(ECF No. 115-1 at 15, 45).

Plaintiff argues that Defendants' financial information is relevant to his claim for punitive damages. (ECF Nos. 115 at 12, 121 at 15). Defendants do not appear to dispute that evidence of Defendants' financial position is a factor that a jury can consider in awarding punitive damages. However, Defendants seem to suggest that the Court has narrowed the dispute to exclude any possibility of punitive damages, making Defendants' financial information is irrelevant. (ECF No. 119 at 16). As explained above, the Court has not dismissed any claims or narrowed the scope of discovery. Therefore, the Court finds that Defendants' financial information is relevant. The Court **GRANTS** the motion regarding this discovery request.

### F. *Underwriting File*

Plaintiff seeks a copy of his "underwriting file" from Defendant Indian Harbor as follows:

> Request for Production No. 11. Produce a complete copy of Indian Harbor's underwriting file related to Plaintiff and/or Policy No. ASR3027275.

(ECF No. 115-1 at 21, 50).

Indian Harbor resists producing the information because it is "not in possession" of the underwriting documents. (ECF No. 119 at 17). It argues that Neptune produced its

14

(Neptune's) underwriting file to Plaintiff, and the underwriting information is irrelevant because the Court already determined that the policy permitted Defendant to pay actual cash value if and until repairs are completed. (*Id.*). In *Moore*, the Court explained that the underwriting file was discoverable because it was relevant to the plaintiff's bad faith and unfair trade practices claims. *Moore v. Indian Harbor Ins. Co.*, No. 3:22-CV-00385, 2023 WL 2520582, at *15 (S.D.W. Va. Mar. 14, 2023). The same reasoning applies here. The Court has not dismissed Plaintiff's bad faith or unfair trade practices claims. Therefore, the information should be produced if it is within Indian Harbor's "possession, ***custody***, ***or control***." Fed. R. Civ. P. 34(a)(1) (emphasis added) (noting that a party's discovery obligation is not limited to documents in its possession). The Court **GRANTS** the motion regarding this discovery request.

   The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented parties.

**ENTERED**: April 8, 2025



Joseph K. Reeder
United States Magistrate Judge