IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**GARY MORRISON,**
**Individually and on behalf of all**
**similarly situated insureds,**

       **Plaintiff,**                           **Civil Action No. 3:23-cv-00451**

**v.**

**INDIAN HARBOR INSURANCE COMPANY,**
**and PENINSULA INSURANCE BUREAU, INC.**

       **Defendants.**

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Indian Harbor Insurance Company's Motion to Compel Discovery Responses from Plaintiff. (ECF No. 143). Plaintiff filed a response in opposition to which Plaintiff filed a reply. (ECF Nos. 153, 158). Therefore, the motion is ripe for decision. Having considered the parties' briefs, the court **GRANTS** the motion to compel, in part, and **DENIES** it, in part, for the following reasons. The parties shall bear their own costs associated with the motion and any discovery compelled by this Order.

**I.**    **Relevant Facts**

This matter arises from a flood event on May 6, 2022, which damaged Plaintiff's residential property. (ECF No. 89 at 2); *see also* (ECF No. 37). At the time of the flood, Plaintiff's property was insured under a flood insurance policy issued by Neptune Flood

1

Incorporated on behalf of Defendant Indian Harbor, identified as Policy No. ASR3027275 ("the Policy"), with effective dates of coverage from May 27, 2021 through May 27, 2022. (ECF Nos. 89 at 2, 100 at 2-3). Defendant Peninsula Insurance Bureau, Inc., served as a third-party administrator for the purpose of Plaintiff's claim.

The Policy was a replacement cost policy and provided replacement cost coverage for flood damage to Plaintiff's real property. (ECF Nos. 89 at 2, 100 at 3-4). Plaintiff asserts that the Policy contains a Replacement Cost Endorsement which deleted each reference to "Actual Cash Value" in the Policy and in addition, the Policy expressly provides, under the Section entitled "Replacement Cost Loss Settlement," that payments would be made "without deduction for depreciation." (ECF No. 89 at 2).

Defendants Indian Harbor and Peninsula assert that under the applicable Policy Conditions, Replacement Cost Loss Settlement, the Policy provided, as follows:

1. We will pay to repair or replace the damaged "Dwelling" after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:
    a. The "Building" limit of liability shown on your "Declarations Page;"
    b. The "Replacement Cost" of that part of the "Dwelling" damaged, with materials of like kind and quality, and for like use; or
    c. The necessary amount actually spent to repair or replace the damaged part of the "Dwelling" for like use.
    2. If the "Dwelling" is rebuilt at a new location, the cost described above is limited to the cost that would have been incurred if the "Dwelling" had been rebuilt at its former location.
    3. When the full cost of repair or replacement is more than $1,000 or more than 5 percent of the whole amount of insurance that applies to the "Dwelling", we will not be liable for any loss under Conditions, Loss Settlement – Replacement Cost Loss Settlement, 1.a. above or Conditions, Loss Settlement – Actual Cash Value Loss Settlement, 1.a. below unless and until actual repair or replacement is completed. You may disregard the "Replacement Cost" conditions above and make claim under this Policy for loss to dwellings on an "Actual Cash Value" basis. You may then make claim for any additional liability according to Conditions, Loss Settlement – Replacement Cost Loss Settlement, 1.a.,

>> b., and c. above, provided you notify us of your intent to do so within 180 days after the date of loss.

(ECF Nos. 100 at 3, 100-2 at 40).

Defendants Indian Harbor and Peninsula also cite to language in the Policy which defined "Actual Cash Value" as "the cost to replace an insured item of property at the time of loss, less the value of its physical depreciation." (ECF Nos. 100 at 4, 100-2 at 19). Defendants indicate that "Replacement Cost" was defined as "the cost to replace damaged property with materials of like kind and quality, without deduction for depreciation." (*Id.* at 4.)

Defendants further contend that the applicable Policy provided replacement cost coverage for the Property's contents. (ECF No. 100 at 4) (Listing Coverages & Premiums at the Premises and including Coverage: E. Replacement Costs on Contents with an annual premium of $14.00). The Replacement Cost Endorsement provided that "until replacement has been effected the amount of liability under this Policy in respect of loss shall be limited to the actual cash value at the time of loss …." (*Id.*, citing ECF No. 100-2 at 48). Defendants assert that the Policy endorsement provided:

> The Underwriters' liability for loss under this Policy, including this Endorsement, shall not exceed the smallest of the following amounts:
>
> i. The amount of the Policy applicable to the destroyed or damaged property, or
> ii. the replacement cost of the property or any part thereof identical with such property and intended for the same occupancy and use, or
> iii. the amount actually and necessarily expended in replacing said property or any part thereof ….

(*Id.*)

Following the flood, Indian Harbor and Peninsula received notification of Plaintiff's loss under the Policy. Plaintiff asserts that he promptly proceeded to clean-up and repair his property to prevent further damage.

The Plaintiff specifically alleged, at Paragraphs 15 and 16 of his Second Amended Complaint:

> 15. After the loss, Plaintiff immediately went to work to prevent further damage to the Property, running a pump for two days to evacuate water from the Property.
> 16. After cleaning up the water, Plaintiff completed repairs to the property sufficient to return it to the condition it was prior to the flood event. These repairs included, but were not limited to, replacing the HVAC system and hot water tank that were damaged by water.

(ECF No. 89 at 2).

Plaintiff contends that Defendants Indian Harbor and Peninsula failed to assist him in completing his claim and failed to offer and pay him the full amount to repair or replace his damaged property. (*Id.* at 2-3). Instead, Defendants Indian Harbor and Peninsula, through Sherri Wynter, an employee of Defendant Peninsula, advised the Plaintiff that Defendants would pay for only a portion of his damages and would be taking a deduction for depreciation in connection with the payment for the necessary repair and/or replacement of the Plaintiff's real property. (*Id.*).

Defendants Indian Harbor and Peninsula argue that Defendant Peninsula received notice of the flood damage on or about May 8, 2022. (ECF No. 100 at 5). They maintain that Peninsula promptly investigated and adjusted Plaintiff's claim. (*Id.*). They further contend that Defendant Peninsula notified Plaintiff on June 23, 2022 that the damage to his home had been measured on a replacement cost basis in the amount of $37,469.18, on an actual cash value basis in the amount of $32,921.06, and that the claim was subject to an applicable deductible in the amount of $5,000. (*Id.*). Defendants argue that

Defendant Peninsula informed Plaintiff that his maximum recovery would be $37,469.18 (the replacement cost) but that Plaintiff would be required to document incurred costs of at least $37,469.18 to collect that amount. (ECF No. 100 at 5). Peninsula requested that Plaintiff "submit the invoices, canceled checks, or other evidence of payment to illustrate the actual incurred cost" of repairs. *See* (*Id.*) Plaintiff returned an executed Sworn Statement in Proof of Loss in which he swore to the loss measurement provided by Defendant Peninsula. (ECF No. 100 at 5-6, citing to Sworn Statement in Proof of Loss). Plaintiff made a claim for the Actual Cash Value of his loss in the amount of $32,921.06, less his $5,000 deductible, for a net claim amount of $27,921.06. Indian Harbor paid Plaintiff $27,921.06. *See* (ECF No. 100 at 5-6).

Based upon his contention that the Defendants failed to properly pay his claim pursuant to the applicable Policy terms, Plaintiff filed his Complaint, including a putative class action, on June 23, 2023, naming Indian Harbor and Peninsula as Defendants. (ECF No. 89 at 3); *see also* (ECF No. 1). Plaintiff subsequently amended his Complaint. In his Second Amended Complaint, Plaintiff asserted claims for breach of contract, bad faith and violations of West Virginia's Unfair Trade Practices Act in connection with the Defendants' handling of his claim. (*Id.*); *see also* (ECF No. 37). In addition, Plaintiff asserted claims on behalf of all similarly situated insureds of Indian Harbor whose claims were improperly subject to deductions for depreciation when they purchased replacement cost coverage. (*Id.*)

## II. <u>Relevant law</u>

Rule 26(b)(1) of the Federal Rules of Civil Procedure outlines the scope of discovery:

5

> [U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Becton, Dickinson & Co. v. BioMedomics, Inc.*, No. 5:20-CV-536-FL, 2021 WL 3864476, at *3 (E.D.N.C. Aug. 30, 2021) (citations omitted). Yet, even if seeking relevant information, the discovery request must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

Although Rule 26(b)(1)'s relevance inquiry does not, itself, pose a high bar, however, its proportionality requirement mandates consideration of multiple factors in determining whether to allow discovery of even relevant information. The factors include: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Ceresini v. Gonzales*, No. 3:21-CV-40, 2022 WL 628520, at *3 (N.D.W. Va. Mar. 3, 2022).

Further, this Court holds that "fishing expeditions" which exceed the boundaries of the complaint and are purely based on unsupported speculation are improper. *Philips N. Am. LLC v. Probo Med. LLC*, No. 2:21-CV-00298, 2022 WL 17793491, at *3 (S.D.W. Va. Dec. 19, 2022) (citing *Cuomo v. Clearing House Assn.*, LLC, 557 U.S. 519, 531 (2009) ("Judges are trusted to prevent 'fishing expeditions or an undirected rummaging through

6

… records for evidence of some unknown wrongdoing.'"))

A party dissatisfied with a discovery response or lack of response can move for an order compelling disclosure or discovery after conferring or attempting to confer with the party that submitted the response or failed to respond. Fed. R. Civ. P. 37(a). Importantly, the party resisting discovery, not the party seeking discovery, bears the burden of persuasion. *Tinsley v. OneWest Bank, FSB*, No. 3:13-CV-23241, 2014 WL 7005852, at *2 (S.D.W. Va. Dec. 10, 2014) (citations omitted). As such, conclusory and unsubstantiated allegations are simply insufficient to support discovery objections based on the grounds of annoyance, burdensomeness, oppression, or expense. *Id.*

### III. Discussion

Defendant identifies the following discovery disputes for the Court's resolution.

#### A. *Verification of Interrogatories*

This issue is resolved per Defendant's reply. (ECF No. 158 at 1 n.1).

#### B. *Requests for Admission*

##### 1. Request for Admission No. 1

REQUEST NO. 1: You did not actually spend more than $32,921.06 to repair Your Property from the damage caused by the Flood.

RESPONSE: Objection. Plaintiff's policy contains a Replacement Cost Endorsement which indicates that he is entitled to the cost of repairing, replacing, or reinstating the damaged property with material of like kind and quality. Further, the Policy defines Replacement Cost as "the cost to replace damaged property with materials of like kind and quality, without deduction for depreciation." As such, the amount that Plaintiff "spent" is not controlling in the matter. Plaintiff's cost of repairing the property was greater than $32,921.06 when considering the time and amount spent and expended by Plaintiff. Plaintiff admits he did not spend more than $32,921.06 in cash to repair his property but he expended such time and resources, along with the cash spent, that equaled or exceeded the sum of $32,921.06.

(ECF No. 143-2 at 3).

The Court concludes that Plaintiff's statements regarding the language of the policy and what is "controlling" in this matter were superfluous. Yet, the Court finds that Plaintiff sufficiently responded to the request regarding how much he spent to repair his property. Under Rule 36 of the Federal Rules of Civil Procedure, party may, when good faith requires, qualify an answer to a request for admission by specifying the part admitted and by qualifying or denying the rest. Fed. R. Civ. P. 36(a)(4). Here, Plaintiff admitted that he did not spend more than $32,921.06 in cash, but he qualified the answer to explain that he expended time and resources, along with the cash spent, that equaled or exceeded the sum of $32,921.06. In order to solicit a more straightforward answer without qualification, the request could have perhaps been worded differently to ask Plaintiff to admit or deny that he did not spend more than $32,921.06 *in cash*, or Defendant could have specifically defined the term "spend" in the request for admission. Regardless, there is nothing ambiguous in Plaintiff's answer. He did not spend more than $32,921.06 in cash to repair his property. Given the wording of the request, Plaintiff's qualification was appropriate, and the Court **DENIES** the motion regarding this request.

### 2. Request for Admission No. 2

> REQUEST NO. 2: You actually spent more than $32,921.06 to repair Your Property from the damage caused by the Flood.
>
> RESPONSE: Objection. Plaintiff's policy contains a Replacement Cost Endorsement which indicates that he is entitled to the cost of repairing, replacing, or reinstating the damaged property with material of like kind and quality. Further, the Policy defines Replacement Cost as "the cost to replace damaged property with materials of like kind and quality, without deduction for depreciation." As such, the amount that Plaintiff "spent" is not controlling in the matter. Plaintiff's cost of repairing the property was equal to or greater than $32,921.06 when considering the time and resources expended, along with the cash spent by Plaintiff.

(ECF No. 143-2 at 3).

Unlike the previous request, Plaintiff did not admit or deny this matter, or any portion of it. His vague response that "Plaintiff's cost of repairing the property was equal to or greater than $32,921.06 when considering the time and resources expended, along with the cash spent by Plaintiff" is deficient under the Federal Rules. Defendant did not inquire regarding the "cost," Defendant asked Plaintiff to admit or deny that he "spent" more than a certain amount.

Despite Plaintiff's deficient response, under the general provisions governing discovery in federal civil actions, the Court must limit the frequency or extent of discovery if it determines that the discovery sought is unreasonably cumulative or duplicative. Fed. R. Civ. P. 26(b)(2)(C). Request No. 2 is simply the inverse of Request for Admission No. 1. By Defendant's own admission, Plaintiff should have admitted one of the requests and denied the other. (ECF No. 143 at 5). Plaintiff has already admitted that he did not spend more than $32,921.06 in cash, but he expended time and resources that exceeded that amount. No matter how Defendant phrases the question, Plaintiff's substantive answer will be the same because Defendant is asking the same fundamental question. It would be futile to order Plaintiff to supplement a cumulative or duplicative request for admission. Therefore, the Court **DENIES** the motion regarding this request.

### 3. Request for Admission No. 4

REQUEST NO. 4: You have produced all documents in Your possession, custody or control, that are identified in Your Initial Disclosures.

RESPONSE: Denied. Plaintiff has been unable to locate all of the documents identified. See Plaintiff's response to Request No. 3.

(ECF No. 143-2 at 4).

As noted, Plaintiff references his response to Request No. 3 in which he stated:

9

> Plaintiff admits that he has produced the documents in his possession, custody or control that he has been able to locate. As Plaintiff explained in his discovery responses and at his deposition, he has been unable to locate or recover his accounting and financial records from 2022 related to the subject property as he changed accountants during that time and neither his prior accountant nor his new accountant have been able to locate the records and Plaintiff has been unable to find his 2022 financial and accounting records.

(*Id.*).

Plaintiff's response to Request No. 4 is paradoxical. On one hand, he denies that he has produced all of the documents in his possession, custody, or control. However, he conversely indicates that the documents are missing. Both of those statements cannot be true. As Defendant noted, if the documents are missing, they are, by definition, not in Plaintiff's care, custody, or control. (ECF No. 158 at 2); *see, e.g., Adeyemi v. Amazon.com Servs., LLC*, No. CV GLR-21-2488, 2024 WL 3370966, at *1 (D. Md. Jan. 24, 2024) ("Documents that are lost, missing, or do not exist are not in the 'possession, custody, or control' of a party. *Gross* v. *Morgan State Univ.*, No. CV JKB-17-448, 2018 WL 9880053, at *7 (D. Md. Feb. 9, 2018). Suspicion alone is insufficient to compel discovery. *AGV Sports Grp., Inc.* v. *LeMans Corp.*, No. CIV. GLR-11-0016, 2013 WL 3776954, at *1 (D. Md. July 16, 2013). Instead, a party must 'demonstrate that the documents they seek to compel do, in fact, exist and are being unlawfully withheld.' *Id.* (internal quotation mark and citation omitted)").

Thus, Plaintiff's response to Request No. 4 is confusing and inadequate under the Federal Rules as it is presently worded. The Court **ORDERS** Plaintiff to amend his response within **seven (7) days**. Defendant asserts in his reply brief that Plaintiff's responses to Request Nos. 3 and 4 should be deemed admitted. However, admitted Request No. 3, and, more importantly, Defendant did not identify Request No. 3 as an

10

issue for the Court's resolution in his motion to compel. (ECF No. 143). Thus, that issue is waived. The Court declines to order any additional relief.

### C. Interrogatories

#### 1. Interrogatory No. 1

INTERROGATORY NO. 1: If you contend that the amount you actually spent to repair or replace the damage identified in your June 24, 2022 Sworn Statement in Proof of Loss was greater than $32,921.06, then state how much you actually spent.

RESPONSE: Objection. Plaintiff's policy contains a Replacement Cost Endorsement which indicates that he is entitled to the cost of repairing, replacing, or reinstating the damaged property with material of like kind and quality. Further, the Policy defines Replacement Cost as "the cost to replace damaged property with materials of like kind and quality, without deduction for depreciation." As such, the amount that Plaintiff "spent" is not controlling in the matter. The Plaintiff's cost of repairing the property was greater than $32,921.06 when considering the time and amount spent and expended by Plaintiff. Plaintiff does not contend that he paid more than $32,921.06 in cash for repairing his property, but he expended such time and resources, along with the cash spent, that equaled or exceeded the sum of $32,921.06.

(ECF No. 143-2 at 10).

Plaintiff's answer does not respond to the interrogatory, which asks how much he spent to repair or replace the damage. His vague indication that he spent more than $32,921.06 is nonresponsive. The interrogatory asks Plaintiff to provide a specific monetary figure. To the extent that Plaintiff considers the time and resources that he expended to be part of the amount that he spent, the monetary value of the time and resources would presumably be included in the total figure. The Court **ORDERS** Plaintiff to supplement his response to this interrogatory within **seven (7) days**.

#### 2. Interrogatory No. 5

INTERROGATORY NO. 5: Identify the date You replaced the hot water heater at the Property after the Flood, including who installed the hot water heater, [from] where it was purchased, who purchased it, when it was purchased and how much it cost.

11

> RESPONSE: Plaintiff replaced the hot water heater on a date after May 26, 2022, but Plaintiff does not have his 2022 records which would reflect the precise date he purchased the new hot water heater (see Plaintiff's response to Request for Admission No. 3).

(ECF No. 143-2 at 12).

Plaintiff did not object to this interrogatory, yet he only responded regarding the date that the water heater was purchased. He thus needs to provide the remaining information. The Court **ORDERS** Plaintiff to supplement his response within **seven (7) days** regarding who installed the hot water heater, from where it was purchased, who purchased it, and how much it cost.

### 3. Interrogatory No. 6

> INTERROGATORY NO. 6: For any Request for Admission to which you either denied or did not respond with an unequivocal admission, please state the basis for your response.
>
> RESPONSE: RFA #4, Plaintiff has been unable to locate all of the documents listed in his Initial Disclosures. RFA #5, there was no Exhibit A attached. RFA # 6, Plaintiff himself acted as the general contractor in the repair of his property. RFA # 8, Plaintiff kept track of the labor of his employees in the same manner he does for every other week. However, he did not separate the labor expended on his property at 1448 Washington Blvd from his work on other properties. RFA # 9, Plaintiff kept track of what he spent, and provided the information and records to his accountant, and, unfortunately, the records have been lost or misplaced. RFA # 10, Plaintiff kept track of his expenses and provided the records to his accountant. Unfortunately, the records have been lost or misplaced. RFA # 11, Plaintiff kept track of his expenses and provided the records to his accountant. Unfortunately, the records have been lost or misplaced.

(ECF No. 143-2 at 13).

Defendant takes issue with the fact that Plaintiff did not provide any explanation regarding why he did not unequivocally admit Request for Admission Nos. 1 and 2. (ECF No. 143 at 7). The Court agrees that Plaintiff did not fully respond to the interrogatory regarding those requests. As previously explained, the two requests are substantively the same question. Therefore, it would be futile for Plaintiff to provide the same explanation

12

twice. The Court **ORDERS** Plaintiff to supplement his response within **seven (7) days** to explain his basis for not unequivocally admitting Request for Admission No. 1.

### 4. Interrogatory No. 8

> INTERROGATORY NO. 8: Please state with specificity any opinions You intend to render at trial as described in Your Rule 26(a)(2) Disclosure dated February 13, 2025 and identify the basis for those opinions.
>
> RESPONSE: Plaintiff will testify regarding the work he performed at his property to timely complete repairs, including the amount of time and resources expended and the amounts paid. Plaintiff will provide his opinion as to the experience necessary to complete the electrical and other work at his property, and the amount of time the work took based upon his experience in maintaining, repairing and cleaning up properties. Plaintiff will testify that the cleanup and repair work took approximately two weeks to complete and that all of the work, except for the replacement of the hot water heater, was completed before May 25, 2022. The hot water heater was replaced on a date after May 26, 2022, but Plaintiff has been unable to retrieve or find his 2022 financial records that would reflect when the hot water heater was purchased.

(ECF No. 143-2 at 14).

Defendant argues that Plaintiff "says he will testify regarding the work he performed but does not discuss that work, much less state the specific amount of time and resources expended, the specific amounts paid, and the specific amount of time the work took." (ECF No. 143 at 9). The parties clearly have differing interpretations of the phrase "state with specificity." However, the Court cannot conclude that Plaintiff's response is inadequate. He explained the specific topics about which he will testify, but he evidently did not perceive the interrogatory to ask for specific amounts of time and resources expended, and amounts paid. The interrogatory does not explicitly ask for such information. Defendant could have defined the phrase "state with specificity" or asked for that specific information. *See generally* (ECF No. 143-1 at 9-11) (providing definitions for the interrogatories). The Court **DENIES** Defendant's motion regarding this request.

The Clerk is instructed to provide a copy of this Order to counsel of record and any unrepresented parties.

**ENTERED**: June 5, 2025

Joseph K. Reeder
United States Magistrate Judge